JOHN McADAMS v. ISAAC F. RANDOLPH.

Defendant sold H. a farm, and took from him a purchase-money mortgage for $10,500.   H.'s grantee conveyed to the plaintiff subject to the mortgage, which was then due, and which the plaintiff assumed to pay.   An agreement that the plaintiff should pay ten per cent. on the mortgage, (the legal rate being seven per cent.,) and that as long as he continued to do so the defendant would let the mortgage remain,

McAdams v. Randolph.

held to be usurious, and that the plaintiff was entitled to recover in this action whatever amount had been paid by him to the defendant in excess of the legal interest.

On rule to show cause, &c.

Action for money had and received, brought to recover the sum of $945, obtained by the defendant from the plaintiff under the following circumstances:

April 1st, 1867, the defendant sold and conveyed a farm to one Henderson, and took from him a purchase-money mortgage for $10,500, payable in five years after its date.

October 1st, 1873, the farm was conveyed by Henderson's grantee to the plaintiff, subject to the said mortgage, which the plaintiff assumed to pay.

About December 1st, 1873, the defendant informed the plaintiff that unless the mortgage should be paid April 1st, 1874, he would require a higher rate of interest. It was then agreed between them that the plaintiff should pay ten per cent. on the mortgage, and that as long as he continued to do so the defendant would let the mortgage remain.

In pursuance of this agreement, interest was paid on the mortgage at the rate of ten per cent. from April 1st, 1874, to October 1st, 1876, inclusive.

The amount claimed by the plaintiff, and found by the court, (a jury being waived,) is the difference between the sum paid to the defendant by way of interest, and the sum he was entitled to receive at seven per cent., the legal rate.

Argued at February Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and REED.

For the rule, *B. Williamson* and *John H. Jackson.*

*Contra, A. V. Schenck.*

The opinion of the court was delivered by

WOODHULL, J. The controversy in this case turns on the character of the agreement of December 1st, 1873.

If, as the plaintiff insists, that agreement was usurious, whatever amount has been paid by him to the defendant in pursuance of it, and in excess of the legal interest, may be recovered in this action. *Brown* v. *McIntosh*, 10 *Vroom* 22.

If, on the other hand, that agreement was not usurious, the payments made in pursuance of it were voluntary and legal, and the plaintiff's claim is without foundation.

Our act against usury, as it then stood, prohibited the taking upon any contract, directly or indirectly, for loan of any money, &c., above the value of $7 for the forbearance of $100 for a year, and after that rate for a greater or less sum, or for a longer or shorter time. The English statutes, from 37 *Henry VIII.* to 12 *Anne*, contain substantially the same provisions, except as to the rate of interest allowed.

Usury, the offence aimed at by all of these acts, including our own, is defined to be the taking of illegal interest, either upon a lending of money or the forbearance of a debt. *Diercks* v. *Kennedy*, 1 *C. E. Green* 210, and cases cited.

Any agreement intended to enable the lender to receive more than legal interest for his money, is usurious. *Muir* v. *Newark Savings Institution*, 1 *C. E. Green* 537, and cases.

The plaintiff's account of the interview which resulted in the making of the agreement in question, is clear and uncontradicted. He says the defendant " came to the farm and introduced himself to me—I had never seen him before—and said that he came to see me in relation to the mortgage—the payment of the mortgage; he said he would require the payment of the mortgage on the 1st of April, 1874 ; I told him that I thought it was pretty short notice; times were hard, and I didn't know that I could raise that amount of money before that time ; he said that he would like to have it; I told him that if possibly I could raise the money, I would raise it and pay him off the mortgage, but it was rather doubtful, as it was a large sum to raise on a farm ; he said if I couldn't raise the amount of the mortgage by the 1st of April, he would require a higher rate of interest; I told him that I thought a farmer couldn't afford to pay more than

seven per cent. interest on a farm ; he said he was aware of that, but if he had this amount of money he could let it out and could make it pay more interest than it was paying on the farm ; I asked him how much more interest he wanted ; he said he wanted ten per cent. on that mortgage ; we then and there agreed that I should pay him ten per cent. on that mortgage, and he was to let it remain so long as I paid the ten per cent."

The transaction disclosed by this testimony seems to me to embrace, in substance and effect, every essential element of usury.

It is urged, on the part of the defendant, that as he never loaned the plaintiff anything, and as the plaintiff, at law, was never indebted to the defendant, there was here no loan in the sense of the act, and therefore no usury.

The argument assumes that in order to constitute usury as between these parties, there must have been a formal and direct lending of money by one to the other.

But that is not the law. " The word *loan*," in the language of Mr. Comyn, " must not be too strictly construed. For there are many cases in which, though no loan originally occurred, yet by some subsequent agreement between the debtor and creditor usury may be generated. * * * It is not necessary to the creation of a loan, that money should be paid on one hand and received on the other ; for the circumstance of a man's money remaining in another's hands, in consequence of an agreement for that purpose, will equally constitute a loan." *Comyn on Usury* 157.

In Diercks *v.* Kennedy, the forbearance or giving time for the payment of a debt is said by Chancellor Green to be in substance a loan.

In *Manners* v. *Postan*, 3 *Bos. & P.* 343, more than legal interest had been taken by the defendant on a note given to A by B, as a collateral security for money lent to C, and endorsed by A to the defendant ; and such usury was held to be well described to be for the forbearance of money lent by the defendant to B.

To the same effect are *Wade* v. *Wilson*, 1 *East* 195 ; *Lee* v. *Cass*, 1 *Taunt.* 511.

" It should always be remembered," says Mr. Comyn, " that the statute lays as much stress upon the word *' forbearance '* as upon the word *' loan.'* And however some of the older cases may be construed, it now appears clear, that where money is owing upon any kind of contract, and forbearance is given for such debt upon the condition of receiving more than five per cent. forbearance money, such a forbearance is as much usury as if the sum of money had been absolutely *lent* upon a contract to pay more than legal interest." *Comyn on Usury* 156.

Assuming it to be true· that Henderson alone was the borrower, and that it was Henderson and not the plaintiff who was indebted to the defendant, it does not follow that there was no usury in this transaction.

But, in point of fact, the plaintiff was just as much a borrower as Henderson, and in precisely the same sense. There was no actual lending of money—that is, no express loan—to either of them. And the plaintiff, after the purchase of the farm, became in equity the principal debtor as between himself and the defendant, while Henderson stood merely as surety. If there was, then, as the argument concedes, a loan sufficient to found usury on as between the defendant and Henderson, it would seem to be unreasonable to deny the existence of such a loan as between the plaintiff and defendant. The fact that Henderson's debt was enforceable at law as well as in equity, while that of the plaintiff could be enforced only in equity, can make no difference.

The payment of illegal interest for the forbearance of a merely equitable debt, is as plainly prohibited by the terms and policy of the act as the like payment in case of a debt strictly legal.

The objection, then, that there was nó such loan in this case as the act requires to constitute usury, is wholly unfounded. Equally groundless is the suggestion that there is in this case any element of contingency or hazard, or any-

thing in the nature of a penalty or forfeiture, to relieve the agreement between these parties from the imputation of usury.

The rule must be discharged, with costs.